IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BILLY PRESTON FORBES, JR., | * | |
| Petitioner | * | |
| v. | * | CIVIL ACTION NO. DKC-12-2215 |
| WARDEN J.F. CARAWAY, | * | |
| Respondent | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

Billy Preston Forbes, Jr., is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Institution at Cumberland, Maryland ("FCI-Cumberland"). On July 25, 2012, he filed this 28 U.S.C. § 2241 Petition for Habeas Corpus relief, seeking to expunge his adjustment proceedings and to have his good conduct credits restored. ECF No. 1. Forbes claims that the evidence relied upon by the Disciplinary Hearing Officer ("DHO") was insufficiently reliable to satisfy due process. Forbes claims that the "Alco-Sensor" test used to determine whether contraband he had in his cell contained alcohol was inaccurate and unreliable. *Id.*

Respondent John F. Caraway, Warden of the FCI-Cumberland, by his counsel, moves for dismissal or, in the alternative for summary judgment. ECF No. 6. Petitioner has responded. ECF Nos. 8 & 16. Respondent has replied. ECF No. 10. Petitioner has filed Surreplies.[1] ECF Nos. 11 & 12. After consideration of these submissions, the court deems a hearing unnecessary

---

[1] Petitioner has also filed a Motion for Leave to File Amended Petition. ECF No. 15. Respondent opposes the Motion. ECF No. 17. Petitioner reiterates his claim and now also alleges that the findings and sanctions imposed by the DHO violated the Administrative Procedure Act ("APA"). The Motion, filed over six months after the filing of the initial Petition and three months after Respondent's dispositive motion shall be denied as futile. The APA does not apply to disciplinary determinations involving reduction of good conduct time. *See* 18 U.S.C. § 3625; *Johnson v. Wiley*, 411 F. App'x 201, 214 (10th Cir. 2011) (18 U.S.C. § 3625 "bars APA review of BOP substantive disciplinary determinations involving the reduction of good time credits.")

Notwithstanding that Petitioner's additional filings and numerous surreplies are filed in contravention of Local Rule 105.2(a), the court has considered each of Petitioner's filings as additional argument in support of Petitioner's opposition to the dispositive motion.

to resolve the issues. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, summary judgment will be entered in favor of Respondent and against Petitioner.

Fed.R.Civ.P. 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to .... the nonmovant, and draw all reasonable inferences in [the nonmovant's] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 645 (4th Cir.2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. *See* 18 U.S.C. § 4042(a)(3). The rules concerning inmate discipline, found in 28 C.F.R. §§ 541.1 et seq., provide for an exhaustive

review process.  If staff believe that an inmate has violated a BOP regulation, an incident report is prepared and the inmate is provided a written copy of the charges.  Ordinarily this occurs within 24 hours of the staff's becoming aware of the incident.  *See* 28 C.F.R. § 541.5(a).

An investigating officer will then advise the inmate of the charges against him, request a statement from the inmate, and advises him of his rights.  After the investigation is completed, the matter may be informally resolved and the matter closed, or materials are forwarded to the Unit Disciplinary Committee ("UDC") for an initial review, which is ordinarily conducted within five working days.  *See* 28 C.F.R. § 541.5(b) & 541.7.  The inmate is entitled to be present at the hearing except during the deliberations of the decision makers or when institutional security would be jeopardized by the inmate's presence.  The inmate may also make a statement and present documentary evidence on his own behalf.  *See* 28 C.F.R. §§ 541.7(d) & (e).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on the facts and, if there is conflicting evidence, based on the greater weight of the evidence. *See* 28 C.F.R. § 541.7(e).  If the UDC finds that the inmate committed the prohibited act or a similar act as reflected in the incident report and determines that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to the Disciplinary Hearing Officer ("DHO") for further proceedings.  *See* 28 C.F.R. §§ 541.7(a) & (g).  The UDC advises the inmate of his rights to be afforded at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses he wishes to be called to testify at the hearing and the nature of the testimony they are expected to provide.  *See* 28 C.F.R. §§ 541.7(g) & 541.8.

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to testify; and (3) present documents on his behalf. *See* 28 C.F.R. §§ 541.8(d), (e) & (f). Witness testimony and documentary evidence may be presented provided the calling of witnesses and disclosure of documents does not jeopardize prison or inmate security. *Id*.

The DHO makes a determination as to whether or not the inmate committed the charged act(s) or similar act(s) if reflected in the incident report and prepares a record of the proceedings which need not be verbatim. *See* 28 C.F.R. §§ 548(h). The record documents the advisement of the inmate's rights, the findings and decision of the DHO, and the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions. *Id*. A written copy of the DHO's decision and disposition must be provided to the inmate. *Id*.

In reliance on Forbes's base file and the declaration of Howard Losiewicz, Discipline Hearing Officer at FCI Cumberland, Respondent contends that Forbes's due process rights were not violated during his adjustment review process. He provides the following information:

On October 5, 2009, Forbes was designated to FCI-Cumberland. ECF No. 6, Ex. 1, Att. B. On August 14, 2011, Forbes received Incident Report Number 2198083 charging him with committing a Code 113 offense, "Making, Possessing, or Using Intoxicants" on August 13, 2011 at approximately 4:52 p.m. *Id*., Ex. 1, Att. C. The report indicated that Senior Officer Hunt conducted a random cell search in cell 214 and discovered a one gallon bag of homemade intoxicants in Forbes's unlocked locker. Hunt tested the contents of the bag with an Alco-Sensor III which registered a positive reading of .098. Hunt asked Forbes whether the bag was his. Forbes replied, "yes, it is mine." *Id*.

Pursuant to regulations, Forbes was advised of his rights. On August 17, 2011, the UDC conducted a hearing. Petitioner stated, during the hearing: "I'm not guilty. They were peaches from [the] kitchen in Food Service canned peaches. I use them to make cheesecake. Hunt never tested it. Lehman took it to the Lieutenant's Office. It was tested four times with all different readings. It was a quart bag not a gallon bag." *Id.*, Att. C. The UDC found Forbes had committed the prohibited act and recommended forwarding the report to the DHO, based on the severity of the charge. *Id.*

On April 19, 2011, Forbes was made aware of his rights and that the DHO would hold a hearing. *Id.* Forbes did not request staff representation or to have any witnesses testify on his behalf. *Id.*

On August 17, 2011, Forbes received notice of the hearing before the DHO. *Id.*, Att. D. Forbes waived his right to have a staff representative at the hearing or call witnesses. He was advised of his rights at the DHO hearing. *Id.*, Att. D & E.

On August 26, 2011, after taking evidence and conducting a hearing, the DHO held there was sufficient evidence to support the finding that Forbes had committed the offense as charged. Specifically, the DHO relied upon the statement of the reporting officer contained in the incident report and Forbes's admission that he possessed the bag of peaches. *Id.*, Att. F. Additionally, BOP Program Statement 6590.07 "Alcohol Surveillance and Testing" lists the Alco-Sensor III as a device authorized to "test liquids suspected of containing alcohol." *Id.*, Ex. 2. Staff are permitted to prepare a disciplinary report on an inmate related to a positive test result for alcohol. *Id.*

Forbes presented four defenses during his hearing. The DHO avers that he considered and rejected each. *Id.*, Ex 1 & 1F. Specifically, the DHO states that he did not give weight to a

5

newspaper article submitted by Forbes which described the Commonwealth of Virginia's determination that a positive handheld breathalyzer test would only establish probable cause to further detain and test a suspect with another calibrated and certified device. The DHO also rejected Forbes's claim that staff conducted multiple tests of the peaches with the Alco-Sensor which returned various results. The DHO found there was no evidence to support the claim, but even if true, pursuant to Forbes's own testimony each test exceeded the .02 limit established by the BOP for determining the presence of intoxicants. Forbes's claim that the peaches, sitting in a plastic bag, could not possibly have created alcohol was also rejected by the DHO. Forbes presented no evidence in support of this claim. The DHO further found that fruit contains natural sugars which naturally react and break down, creating alcohol. Lastly, the DHO considered Forbes's claim that he only had the peaches for three days. Forbes again offered no evidence demonstrating how the peaches were obtained from food services, stored, handled, or how long the peaches were opened before they came to be stored in his cell. The DHO therefore rejected Forbes's unsubstantiated claim that the peaches had not been in his possession long enough to produce a detectible amount of alcohol. *Id*.

Based on the bag being found in Forbes's cell, Forbes admitting possession, and the bag testing positive for alcohol, the DHO found Forbes committed a Code 113 offense. Forbes was sanctioned with the loss of 41 days Good Conduct Time, 30 days Disciplinary Segregation-- suspended pending 180 days clear conduct, and 30 days Commissary Restriction. *Id*. The DHO further noted that making, possessing or use of intoxicants is forbidden as such actions threaten the security and orderly running of the institution and endanger the safety of inmates and staff. *Id*.

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison, disciplinary proceedings where an inmate faces the possible loss of good conduct time ("GCT"), he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel during prison disciplinary proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

The court finds that the disciplinary process associated with Forbes's institutional charge meets the aforementioned minimum due process procedural requirements. He received advanced written notice of the charges, was advised of his rights, and received formal notice of the DHO hearing.

Further, the DHO submitted a written statement as to the evidence relied on to determine that Forbes violated Code 113, and offered specific reasons why the sanctions were imposed. Forbes was given the opportunity to call witnesses and to have a staff representative present but

waived such rights. His testimony did not exonerate him from the Code 113 charge; rather, he implicated himself before the DHO indicating he was in possession of the fruit but disputed his intention for its use.[2]

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.[3]

The proceedings before this court are not a retrial of the incidents and the undersigned finds that the DHO decision was based upon "some evidence." Forbes' contentions that the manufacturer's instructions for use and calibration of the Alco-Sensor III were not followed, the officer who employed the Alco-Sensor III was not properly trained, the Alco-Sensor III is a breathalyzer not suitable for measuring the alcohol content of liquids, and procedures for

---

[2] To the extent Petitioner claims that his possession of the fruit could have been charged under a variety of Code sections, such a claim is of no constitutional moment. The DHO has the discretion, based upon the evidence, to find that the inmate "committed the prohibited act charged and/or similar prohibited act(s) as described in the incident report." *See* 28 C.F.R. 5418(a)(1).

[3] The role of the district court is not to afford a *de novo* review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.

recording the results of the test were not followed[4] (ECF Nos. 1 & 8), are all in essence challenges to the weight of the evidence against him. The Supreme Court has made clear:

> Ascertaining whether [substantive due process] is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or **weighing of the evidence**. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill,* 472 U.S. at 455-56 (emphasis added). The DHO report indicates that in finding some evidence to sustain the Code 113 charge, he relied on: (1) the investigating officer's report; (2) statements made by Forbes at the hearing; and (3) the results of the Alco-Sensor III testing. BOP regulations specifically require use of the Alco-Sensor instrument for testing suspect liquids. Liquids with a test of .02 or higher are considered positive for alcohol. ECF No. 6, Exs. 1 & 2. Petitioner has failed to offer any evidence that the alleged deficiencies regarding use of the Alco-Sensor actually resulted in an improper reading. The facts relied upon by the DHO are sufficient upon which to base a prison disciplinary conviction. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. *Id.* at 456. The DHO findings constitute "some" facts upon which the DHO was entitled to rely in finding Forbes guilty of the charged conduct. *See Martinez-Fuentes v. Fisher*, 2011 WL 23112428 (D. Minn. Apr. 5 2011) (rejecting challenge under the "some evidence" standard to the sufficiency of the Alco-Sensor test result); *accord*

---

[4] Petitioner's claim that prison policies were not followed is unavailing. Prison regulations and policy statements are "primarily designed to guide correctional officials in the administration of a prison [and] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). So long, as here, constitutional minima are met, failures as alleged by Petitioner do not state a claim. *See Mykers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("Regardless of any alleged violations of internal regulations the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met.")

*Smith v. Meneffe*, 2003 WL 1872668 at *3 (S.D.N.Y. April 10, 2003); *Mills v. Nash*, 2006 WL 477030 (D. N.J. Feb. 27, 2006).

    For the aforementioned reasons, the court concludes that Forbes's disciplinary hearing process comports with due process and his constitutional rights were not otherwise violated. The DHO's decision shall stand. Habeas relief shall be denied. A separate Order follows.

Date:  April 22, 2013                                          /s/
                                                                                           DEBORAH K. CHASANOW
                                                                                           United States District Judge